UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM VALENTINO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SELECT PORTFOLIO SERVICING, INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05043-JCS<br><br>**ORDER DENYING PRELIMINARY INJUNCTION AND VACATING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 39 |

## I. INTRODUCTION

This is a case under the California Homeowner Bill of Rights ("HBOR"). Plaintiff Abraham Valentino contends that Defendants Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank National Association wrongfully proceeded with the foreclosure of his home while a loan modification application was pending. The Court issued a Temporary Restraining Order ("TRO") on April 14, 2015 barring Defendants from proceeding with a foreclosure sale. *See* dkt. 38. Valentino now seeks a preliminary injunction. The Court held a hearing on April 24, 2015. Although aspects of Defendants' conduct in this litigation raise concern, Valentino's Motion is DENIED for the reasons stated below, and the Temporary Restraining Order is VACATED.[1]

## II. BACKGROUND

### A. The Homeowner Bill of Rights

This case is based on a purported violation of the protections afforded by the HBOR, specifically California Civil Code section 2923.6. That statute attempts to eliminate the practice whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application, commonly known as dual tracking. *See Jolley v. Chase Home Fin.,*

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

*LLC*, 213 Cal. App. 4th 872, 904 (2013). The following subparts of section 2923.6 are relevant to this action:

> (c) If a borrower submits a *complete* application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
>> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>>
>> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>>
>> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.
>
> . . .
>
> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.
>
> (h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with *all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer*.

Cal. Civ. Code § 2923.6 (emphasis added). The HBOR provides a private right of action of action for injunctive relief "[i]f a trustee's deed upon sale has not been recorded," and for damages if the deed upon sale has been recorded. *Id.* § 2924.12(a), (b).

**B.     Procedural History**

Valentino filed this action in state court in October of 2014 alleging that Defendants

2

violated the HBOR by proceeding with foreclosure while a loan modification application was pending. The state court granted Valentino's application for a TRO, and ordered Defendants to show cause why a preliminary injunction should not issue by filing a response no later than November 10, 2014 and attending a hearing on November 18, 2014. Defendants removed the case to this Court on November 14, 2014 asserting diversity jurisdiction. There is no indication in the record that Defendants complied with the state court's order to show cause—specifically, the deadline for a written response four days before Defendants removed the case—and Valentino did not renew his application for a preliminary injunction in this Court after removal.

Defendants moved to dismiss, and Valentino amended his complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. The Court then granted Defendant's motion to dismiss Valentino's first amended complaint on February 10, 2015, but granted Valentino leave to amend his complaint no later than March 12, 2015. At a case management conference on February 13, 2015, Valentino's counsel suggested that mediation would be worthwhile, and proposed extending the deadline for an amended complaint so the parties could focus on settlement. Defendants' counsel endorsed this approach. The Court referred the case for mediation within ninety days[2] and extended the deadline for a second amended complaint by ninety days, resulting in a new amendment deadline of June 10, 2015.

### C. Factual Background and Current Procedural Posture

SPS states that Valentino's loan has been in default since October 1, 2008, and that Valentino "has missed more than seventy-eight (78) payments and the arrearage is more than $2,231,705.28." Weinberger Decl. (dkt. 40-1) ¶ 14.

After Valentino applied for a loan modification, SPS sent him a letter on June 16, 2014 requesting documents required to evaluate the application. Weinberger Decl. ¶ 4 & Ex. 1. As is relevant to the present Motion, this letter stated that "[e]ach self-employed borrower must provide copies of each of the most recent quarterly or year-to-date profit and loss statement [sic]." *Id.* ¶ 4

---

[2] Despite counsel's statement to the contrary at the April 24 hearing, the case was indeed referred for mediation through the Court's alternative dispute resolution program. *See* Civil Minute Order (dkt. 32).

3

1 & Ex. 1 at ECF p. 8.  The letter set a deadline of August 15, 2014, stated that the application

2 would be considered withdrawn if the documents were not received, and included a notice that

3 "[t]ime is of the essence."  *Id.* ¶ 4 & Ex. 1 at ECF pp. 6, 9.

4        SPS sent a letter reminding Valentino of the deadline on July 1, 2014.  *Id.* ¶ 5 & Ex. 2.

5 SPS then sent a series of letters extending the deadline for Valentino to file his financial

6 documents: first to September 6, then to November 13, and finally to November 30, 2014.  *Id.*

7 ¶¶ 6−8 & Exs. 3−5.  Each of these letters was nearly identical to the June 16 letter, listing the

8 documents needed, explaining that the application would be withdrawn if the documents were not

9 received by the deadline, and admonishing Valentino that time was of the essence.  *See id.* Exs.

10 1−5.[3]

11        On January 27, 2015, Defendants' counsel sent Valentino's counsel an email designated as

12 "Confidential settlement communication" that reads as follows:

> Peter,
>
> The servicer is requesting that Mr. Valentino provide his most recent (not older than 90 days) quarterly or year-to-date profit and loss statement. Please provide directly to my office as soon as possible, and make sure to include Kim Ward, attached, when you send it.
>
> Thank you.
>
> Marcus

*Id.* Ex. 6.  The same day, Valentino's attorney responded that he "sent [the] request on to [his] client with a note about urgency."  *Id.* Ex. 7.  Valentino states that he "was informed that the lender's attorney had asked for three-months of profit and loss statements but received no written request for those P&L's and no deadline for submission."  Valentino Decl. (dkt. 39) ¶ 3.

       On February 13, 2015, SPS sent Valentino a letter stating that "SPS did not receive the required documents within the timeline specified," and thus "did not evaluate this account for loss mitigation and . . . closed this request for review."  Weinberger Decl. ¶ 12 & Ex. 8.  Valentino

---

[3] Later correspondence indicates that SPS also sent Valentino a letter requesting documents on January 12, 2015, although no such letter is included in the record or referenced in any declaration.  *See* Weinberger Decl. Ex. 9 ("On January 12, 2015, SPS sent Mr. Valentino a letter (enclosed) informing him that SPS needed income documentation.").

1    submitted the profit and loss statements "in the first week of March 2015." Valentino Decl. ¶ 3.

2    SPS states that Valentino appealed the denial on March 4, 2015 "based, in part, on his assertion

3    that his income was on the rise." Weinberger Decl. ¶ 12.

4        SPS sent a letter dated March 27, 2015 to Valentino's attorney, responding to a request to

5    review its denial of Valentino's modification application. Valentino Decl. ¶ 4; TRO Opp'n (dkt.

6    36) Ex. 1; Weinberger Decl. Ex. 9. On April 9, 2015, Valentino spoke to an SPS representative

7    who told him that SPS did not consider the profit and loss statements because it had not received

8    them on time. Valentino Decl. ¶ 4. The representative stated that under some circumstances, SPS

9    would reopen the modification application to consider late-filed documents, but that SPS would

10   not do so within thirty-seven days of the foreclosure sale set for April 15, 2015. *Id.* Valentino

11   responded that he "understood the scheduled date to be a placeholder," based on SPS having set

12   four previous "placeholder" dates after the state court issued the first TRO.[4] *Id.*

13       On Monday, April 13, 2015, Defendants' counsel sent an email stating their intent to

14   proceed with the April 15 foreclosure sale. *Id.* ¶ 5. Valentino filed his TRO application (dkt. 34)

15   that day, and on April 14, 2015 the Court issued a TRO and ordered the parties to show cause why

16   a preliminary injunction should or should not issue. Order Granting TRO (dkt. 38). In accordance

17   with the Court's Order, the parties filed simultaneous briefs on April 17 and April 22, 2015

18   (Valentino's opening brief takes the form of a Motion for Preliminary Injunction), and the Court

19   held a hearing on April 24, 2015.

20   **III.   ANALYSIS**

21       **A.   Legal Standard**

22       "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.*

23   *Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary

24   injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

25   irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

26   and that an injunction is in the public interest." *Id.* at 20. Irreparable harm must be likely—it is

---

[4] "19 November 2014, 17 December 2014, 25 February 2015, and 16 March 2015." Valentino Decl. ¶ 4.

1  no longer sufficient to grant a preliminary injunction upon a mere showing of a "possibility" of

2  irreparable harm when the other factors weigh heavily in favor of the plaintiff. *Alliance for the*

3  *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Nonetheless, the Ninth Circuit still

4  evaluates the likelihood of success on a "sliding scale." *Id.* A preliminary injunction may be

5  warranted upon a showing of "serious questions going to the merits" as well as "a hardship

6  balance that tips sharply toward the plaintiff," so long as the plaintiff is likely to suffer irreparable

7  harm and the injunction or restraining order is in the public interest. *Id.*

**B.  Valentino Has Not Shown Likelihood of Success or Serious Questions Going to the Merits**

Both standards discussed above require Valentino to make some showing as to the merits of the case: either that he is likely to succeed, or that serious questions go to the merits. Because the record indicates that Valentino is unlikely to prevail on the merits, the Court may not grant a preliminary injunction.

The relevant portion of the HBOR only bars foreclosure where "a borrower submits a complete application for a . . . loan modification," which in turn requires that "a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(c), (h). Here, SPS's June 16 letter plainly stated that Valentino, as a self-employed borrower, must submit profit and loss statements. *See* Weinberger Decl. ¶ 4 & Ex. 1. Valentino states that he submitted such statements in March of 2015. Valentino Decl. ¶ 3. The relevant question is therefore whether that submission fell "within the reasonable timeframes specified by" SPS. *See* Cal. Civ. Code § 2923.6(h).

SPS set an initial deadline of August 15, 2014, which it ultimately extended to November 30, 2014.[5] *See* Weinberger Decl. ¶¶ 4, 8 & Exs. 1, 5. Valentino does not dispute that each of these letters requested profit and loss statements, and does not suggest that he submitted such statements within the deadlines that they set. Instead, Valentino makes much of the fact that

---

[5] Defendants' response brief indicates that the deadline was December 1, 2014. *See* Defs.' Response Br. (dkt. 43) at 2. That appears to be erroneous, but even if true, the difference is not material.

defense counsel's January 27, 2015 email to Valentino's attorney, requesting the profit and loss statements "as soon as possible," was not supported by a new letter and did not set a new deadline. *See* Mot. (dkt. 39) at 2−3 ("Plaintiff received no written request for those P&L's and no deadline for submission."). In the Court's view, however, those facts tend to favor Defendants' position that the January 27 email—which was presented as settlement communication—did not serve to formally extend the time to submit documents. That period expired on November 30, 2014, and Valentino has provided no evidence that he submitted the required documents before that deadline. The Court finds that to be an eminently reasonable deadline for documents originally requested in June. Valentino therefore failed to submit a "complete" application within the meaning of the HBOR, because he did not "suppl[y] the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." *See* Cal. Civ. Code § 2923.6(h). With no complete application submitted, the HBOR provides no impediment to foreclosure.

Valentino argues that a preliminary injunction should issue because the "date of [SPS's] denial letter establishes that it had Plaintiff's [profit and loss statements] before it when it chose to deny the application without considering them." Mot. at 4. That statement is not accurate: SPS denied Valentino's application on February 13, 2015, and Valentino did not submit the profit and loss statements until "the first week of March 2015." Valentino Decl. ¶ 3; Weinberger Decl. ¶ 11 & Ex. 8. Valentino's argument appears to be based on SPS's March 27 letter in response to Valentino's appeal, stating that SPS found no error in its initial denial. *See* Weinberger Decl. Ex. 9. Valentino cites no authority, however, that would require a loan servicer to consider new documents on appeal that the borrower failed to submit before the initial denial.[6] The Court is aware of no such authority, and finds no such requirement in the HBOR statute on which

---

[6] The Court notes that both of Valentino's briefs on the present motion wholly failed to comply with the Court's previous instruction that the parties cite precedent in support of their arguments. *See* Order Granting Mot. to Dismiss at 11 ("If any later stage of this case requires briefing, both parties are instructed to cite case law supporting their legal arguments."). Defendants' briefs are also sparsely cited, but at least cite cases in describing the appropriate legal standard and assert a lack of precedent interpreting the HBOR's "reasonable timeframes" provision.

1  Valentino bases his claim.

2  Valentino's other arguments are no more persuasive. He argues that federal regulations
3  promulgated under the Dodd-Frank Wall Street Reform and Consumer Protection Act "require a
4  lender to make a reasonable, good-faith determination *before or when consummating* a mortgage
5  loan that the consumer has a reasonable ability to repay the loan," but fails to explain how such a
6  requirement is relevant to SPS's denial of Valentino's *existing* loan or to the scope of protection
7  available under the HBOR. *See* Mot. at 4 (citing 12 U.S.C. § 5481 *et seq.*; 12 C.F.R. § 1024,
8  1026) (emphasis added). Valentino also notes that SPS recently conceded its inadvertent failure to
9  send a letter requesting an explanation of Valentino's hardship and Valentino's two most recent
10 tax returns, apparently prepared in response to communication from Valentino's attorney in
11 October of 2014. *See* Pl.'s Response Br. (dkt. 42) at 1−2 & Ex. A. He does not explain, however,
12 why SPS's failure to send that letter—which does not discuss Valentino's profit and loss
13 statements—excuses Valentino's failure to submit the profit and loss statements before the
14 deadline. *See id.*

15 Because SPS clearly communicated that Valentino was required to submit the profit and
16 loss statements by November 30, 2014, and Valentino failed to do so, Valentino is not entitled to
17 protection under the HBOR. Valentino has therefore made no showing of likelihood of success or
18 serious questions going to the merits of his claim, and his request for a preliminary injunction
19 must be DENIED. The Court does not reach the parties' arguments regarding the remaining
20 elements of the *Winters* and *Alliance for the Wild Rockies* tests.

21 **C.    Defendants' Litigation Conduct Raises Concerns, but Provides No Basis for a Preliminary Injunction**

23 The Court notes that aspects of Defendants' conduct during this litigation raise concerns
24 regarding Defendants' good faith. First, Defendants appear to have disregarded an order by the
25 state court before the case was removed, requiring Defendants to file a response to that court's
26 order to show cause. Second, in a case management conference before this Court, defense counsel
27 endorsed granting Valentino an extension of time to amend his complaint in order to allow the
28 parties to mediate the case, with no indication whatsoever that Defendants intended to sell

Valentino's home during the intervening period—thus preventing any opportunity to arrange for expedited mediation to occur before the foreclosure sale. The recent disclosure that SPS negligently failed to send a response to correspondence from Valentino's attorney in early October is also troubling. Despite the Court's concerns, however, such conduct does change the fact that Valentino failed to submit a timely and complete loan modification application, and thus cannot claim protection under the HBOR.

### IV. CONCLUSION

For the reasons stated above, Valentino's Motion for Preliminary Injunction is DENIED. The Temporary Restraining Order issued April 14, 2015 is hereby VACATED.

**IT IS SO ORDERED.**

Dated: April 24, 2015

JOSEPH C. SPERO
Chief Magistrate Judge